# Supreme Court of Texas

No. 21-0028

TotalEnergies E&P USA, Inc.,

*Petitioner*,

v.

MP Gulf of Mexico, LLC,

*Respondent*

On Petition for Review from the
Court of Appeals for the Twelfth District of Texas

JUSTICE BLAND, concurring.

I agree with the Court that the parties unequivocally committed questions about the scope of arbitrability to the arbitral forum, even in the first instance. I therefore join the Court's opinion. The dissent concludes, in contrast, that a court must decide whether this dispute falls within certain threshold conditions for arbitration.[1] Because this dispute meets those conditions, and the party seeking to compel arbitration raised this issue as an alternative ground for affirming the

---

[1] *Post* at 4–5.

court of appeals' judgment, the petitioner has failed to demonstrate error. Either way, the judgment must be affirmed.

## I

The parties dispute liability for costs incurred in operating their shared energy assets. Respondent MP Gulf of Mexico, LLC alleges that Petitioner TotalEnergies E&P USA, Inc. is liable for a share of expenses associated with a "Common System" of "floating production, storage and offloading" vessels under the parties' Cost Sharing and System Operating Agreements. Total responds that MP Gulf must allocate the disputed expenses to itself.

After mediation proved unsuccessful, Total sued MP Gulf for declaratory judgment and demanded arbitration with the International Institute for Conflict Prevention and Resolution, invoking the Cost Sharing Agreement. MP Gulf filed a competing claim with the American Arbitration Association, invoking the System Operating Agreement. Days later, Total moved the trial court to stay the AAA arbitration, arguing that the Cost Sharing Agreement does not require AAA arbitration. In response, MP Gulf moved to compel arbitration, arguing that it claims damages under the System Operating Agreement and further that Total previously conceded that it must arbitrate disputes arising under the System Operating Agreement under the AAA.

The trial court stayed the AAA arbitration and denied MP Gulf's motion to compel. MP Gulf appealed under Texas Civil Practice and Remedies Code Sections 51.016 and 171.098. The court of appeals reversed, holding that the parties had delegated arbitrability, including the question of which agreement controls the dispute, to the

2

arbitrators.[2] The court of appeals further observed that the System Operating Agreement's arbitration clause was "much broader" than Total suggested.[3]

## II

A reviewing court must first consider which arbitration provision governs this case. The parties contest the application of the arbitration provision found in Article 16.16 of their System Operating Agreement. Article 16.16 provides that "[a]ny dispute between the Parties" concerning the System Operating Agreement "shall be resolved under the mediation and binding arbitration procedures of this Article 16.16":

> **16.16 <u>Dispute Resolution Procedure</u>.** Any dispute between the Parties concerning this Agreement (other than Claims by a third party under which a Party hereto is claiming indemnity, and such third party Claim is in litigation) shall be resolved under the mediation and binding arbitration procedures of this Article 16.16. The Parties will first attempt in good faith to resolve all disputes by negotiations between management level persons who have authority to settle the controversy. If any Party believes further negotiations are futile, such Party may initiate the mediation process by so notifying the other Parties to the dispute ("Disputing Parties") in writing. The Disputing Parties shall then attempt in good faith to resolve the dispute by mediation in Houston, Texas, in accordance with the Commercial Rules of the American Arbitration Association ("AAA"), as such procedure may be modified by agreement of the Disputing Parties. The Disputing Parties shall share the costs of mediation services equally and shall each have present at the mediation at least one individual who has authority to

---

[2] 647 S.W.3d 96, 102–03 & n.4 (Tex. App.—Tyler 2020).

[3] *Id.* at 101.

3

settle the dispute. If the dispute has not been resolved pursuant to mediation within sixty (60) days after initiating the mediation process, the dispute shall be resolved through binding arbitration, as follows:

**16.16.1 <u>Selection of Arbitrators</u>:** If any dispute or controversy arises between the Parties out of this Agreement, the alleged breach thereof, or any tort in connection therewith, or out of the refusal to perform the whole or any part thereof, and the Parties are unable to agree with respect to the matter or matters in dispute or controversy, the same shall be submitted to arbitration before a panel of three (3) arbitrators in accordance with the rules of the AAA and the provisions in this Article 16.16. The panel of arbitrators shall be chosen as set forth in Article 16.16.1 (a) if the dispute or controversy only involves two Parties. If the dispute or controversy involves more than two Parties, then the panel of arbitrators shall be chosen as set forth in Article 16.16.1 (a) if the Parties can unanimously agree to group themselves into one group of claimants and one group of respondents. If the dispute or controversy involves more than two Parties and the Parties cannot unanimously agree to group themselves into one group of claimants and one group of respondents, then the panel of arbitrators shall be chosen as set forth in Article 16.16.1 (b). The arbitrators selected to act hereunder shall be qualified by education, experience, and training to pass upon the particular matter or matters in dispute.

Total argues that Article 16.16 does not apply because the parties' dispute is confined to the Cost Sharing Agreement and does not implicate the System Operating Agreement. Total contends that Article 16.16 is limited to disputes arising *exclusively* out of the System Operating Agreement. "Agreement" is defined as "this System Operating Agreement, together with its Exhibits." The Cost Sharing

Agreement is not an exhibit to the System Operating Agreement. Total argues that this dispute does not fall within Article 16.16 because the relief it seeks is confined to an interpretation of the parties' Cost Sharing Agreement and none other.

MP Gulf responds that the System Operating Agreement governs the Common System expense allocations between the parties and the recovery of those disputed costs. The Cost Sharing Agreement explicitly provides as much, as it incorporates the System Operating Agreement as "a part hereof for all purposes." MP Gulf characterizes Total's declaratory judgment claim as "artful pleading" designed to avoid MP Gulf's efforts to collect under the System Operating Agreement.[4] The sweeping language of the System Operating Agreement and Article 16.16 includes the parties' dispute and requires arbitration, it argues, including the arbitrator's determination of arbitrability.

"Whether the claims in dispute fall within the scope of a valid arbitration agreement" is a question of law we review de novo.[5] "A party seeking to compel arbitration must establish the existence of a valid arbitration agreement and that the claims at issue fall within the scope of that agreement."[6] If the proponent succeeds, the burden then shifts to

---

[4] *See In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 190 (Tex. 2007) (holding that "arbitrability turns on the substance of a claim, not artful pleading").

[5] *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018).

[6] *Id.*

5

the party resisting arbitration to prove an affirmative defense that precludes arbitration.[7]

Total neither seeks to prove an affirmative defense nor disputes the validity of the System Operating Agreement or its arbitration provision. Instead, Total resists the argument that the arbitration provision encompasses this dispute. Reading the two agreements together, as we must, Total fails to demonstrate that the claims alleged in this case fall outside the scope of Article 16.16.

The Cost Sharing Agreement provides that all "[o]peration of the Common System"—for which MP Gulf seeks payment—"will be conducted pursuant to the provisions . . . of the System Operating Agreement attached hereto and made a part hereof *for all purposes*."[8] The System Operating Agreement in turn provides that all expenses and allocations from operation of the Common System "will be as provided in the Cost Sharing Agreement." Total admits that the System Operating Agreement is an exhibit to the Cost Sharing Agreement and each agreement expressly incorporates the other. The System Operating Agreement provides that all charges and accounting for expenditures of the Common System will be calculated under an exhibit to the System Operating Agreement, not the Cost Sharing Agreement.

Under ordinary contract-interpretation principles, a document incorporated by reference and attached as an exhibit is part of the agreement.[9] "[I]nstruments pertaining to the same transaction may be

---

[7] *Id.*

[8] (Emphasis added).

[9] *See In re Bank One, N.A.*, 216 S.W.3d 825, 826 (Tex. 2007).

6

read together to ascertain the parties' intent, even if the parties executed the instruments at different times," and "courts may construe all the documents as if they were part of a single, unified instrument."[10] With respect to an arbitration agreement, "it does not matter which document" contains the agreement to arbitrate if the dispute is encompassed by the arbitration provision.[11]

Total's attempt to silo the Cost Sharing Agreement from the System Operating Agreement lacks record support and legal merit. It conflicts with the mutual incorporation of the two agreements and the express contractual language directing that they be construed together. The System Operating Agreement provides that "[a]*ny* dispute between the Parties concerning this Agreement . . . shall be resolved under the mediation and binding arbitration procedures of this Article 16.16."[12] The provision governing the selection of arbitrators similarly provides that, if "*any* dispute or controversy arises between the parties out of this Agreement"[13] or the alleged breach thereof, "the same shall be submitted

---

[10] *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (footnote omitted); *see also Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393 (5th Cir. 2002) ("[S]eparate agreements executed contemporaneously by the same parties, for the same purposes, and as part of the same transaction, are to be construed together." (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990))).

[11] *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 606 (Tex. 2005).

[12] (Emphasis added). The broad language does not support Total's attempt to isolate this dispute from the System Operating Agreement by artfully pleading that only the Cost Sharing Agreement is at issue or its contention that principles of dominant jurisdiction except the dispute from the agreement's arbitration provision because it filed suit first.

[13] (Emphasis added).

to arbitration." This dispute over reimbursement of costs associated with operating the Common System both "concerns" the System Operating Agreement, which establishes that system, and arises "out of this [System Operating] Agreement." Total's narrow construction is not borne out by the broad language the parties chose. The court of appeals correctly noted that "the arbitration provision is much broader than Total claims."[14] Accordingly, the System Operating Agreement and its Article 16.16 govern.

### III

Turning to the System Operating Agreement's requirements, the Court summarizes the three questions presented: (1) which party bears disputed common-system expenses; (2) whether the allocation dispute must be resolved in arbitration or in court; and (3) who decides arbitrability.[15] In this case, however, the answer to the third question is mainly an academic exercise.

The answer to the third question would be paramount and determinative if the court of appeals had declined to compel arbitration; instead, the court of appeals properly compelled it.[16] Once the dispute reaches arbitration, Article 16.16 plainly requires application of the AAA rules, which, as the Court ably explains, require the arbitrator to decide arbitrability questions.[17] The parties remain free to raise their disagreements concerning arbitrability in the arbitral forum. The

---

[14] 647 S.W.3d at 101.

[15] *Ante* at 9.

[16] 647 S.W.3d at 103.

[17] *Ante* at 29.

8

arbitrator's decisions will conclusively govern the matter unless and until a court adjudges that the arbitrator exceeded the scope of the arbitrator's power, as in any other case under the Federal Arbitration Act.[18]

In *Henry Schein, Inc. v. Archer & White Sales, Inc.*,[19] the United States Supreme Court examined whether federal courts could, under the Federal Arbitration Act, "short-circuit the process and decide the arbitrability question themselves if the argument that the arbitration agreement applies to the particular dispute is 'wholly groundless.'"[20] The Court concluded that the Act does not contain a "wholly groundless" exception empowering a court to decline to send the case to arbitration despite the parties' agreement to arbitrate questions of arbitrability.[21] In this case, in contrast, the court of appeals dutifully applied Article 16.16 and sent the case to arbitration.[22] In short, this Court could affirm the court of appeals on the alternative ground that the parties' agreement requires arbitration. Even accepting the dissent's view that

---

[18] *See* Tex. Civ. Prac. & Rem. Code § 171.088 (providing the conditions for vacating an arbitration award); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (describing the Federal Arbitration Act's provision for "back-end judicial review of an arbitrator's decision if an arbitrator has 'exceeded' his or her 'powers'" (quoting 9 U.S.C. § 10(a)(4))).

[19] 139 S. Ct. 524.

[20] *Id.* at 527–28.

[21] *Id.* at 529.

[22] *See* 647 S.W.3d at 101. The dissent concedes that the arbitrator resolves questions of arbitrability once any antecedent condition in the agreement is met. *Post* at 4–5.

the agreement is equivocal about who decides the antecedent conditions,[23] those conditions unequivocally are met.

*    *    *

Both the Court and the dissent correctly observe that it is the parties' agreement in each case that resolves the arbitrability question.[24] The Court holds that the parties delegated the question of arbitrability to the arbitrator, which effectively sends the case to AAA arbitration for consideration by the arbitral forum.[25] The dissent would require a court to resolve a threshold question of whether certain antecedent conditions for arbitration are met.[26] Because the agreements require arbitration of this dispute either way and the court of appeals properly compelled it, the Court and the dissent's alternative paths lead to the same destination. Compelling arbitration is the correct outcome. I join the Court's opinion, observing that the court of appeals' judgment also may be affirmed on the basis that any threshold consideration has been met.

Jane N. Bland
Justice

**OPINION FILED:** April 14, 2023

---

[23] *See post* at 4.

[24] *Ante* at 41 n.29; *post* at 3.

[25] *Ante* at 47.

[26] *Post* at 4–5.